CASE No. 820.

MITCHELL v. NELSON.

The owner of a rice plantation rented it in December for the ensuing year, under a written agreement that $1000, to be advanced in equal parts by himself and his tenant, should be expended in improving the place, so as to enable the tenant to make a crop, the amount advanced by the tenant to be a credit on the rent until such $1000 had been expended in repairs, if so much were necessary; and that if such amount should be insufficient to make such repairs thorough, the owner would advance something more, so as to render the repairs complete; and the tenant agreed to return the plantation in good order at the end of the year. In April an unusually high tide broke the river banks and flooded a portion of the plantation, and the mending of this break was necessary to the making of the crop, and also to the preservation of the plantation, and required a large expenditure of money. *Held*, that under their agreement the owner was liable for this expenditure.

Before FRASER, J., Charleston, July, 1879.

Action by Charles T. Mitchell against Peter Nelson and William F. Colcock, Jr., commenced in January, 1879. The case is fully stated in the Circuit decree, which is as follows :

This case was heard by me, by consent of counsel, in open court, without a jury, at the term of the Court of Common Pleas for Charleston county, ending July 11th, 1879.

On December 28th, 1877, the plaintiff and defendants entered into an agreement, in writing, in reference to the rent of a certain plantation on Cooper river, in Charleston county, known as "Buck Hall," for the year 1878, which is as follows, to wit :

"STATE OF SOUTH CAROLINA.—Memorandum of an agreement made and concluded between C. T. Mitchell, of the first part, and Messrs. Nelson & Colcock, of the second part, this 28th day of December, in the year of our Lord 1877, witnesseth, that the said party of the first part does hereby agree to hire to the party of the second part, all that plantation called 'Buck Hall,' on the east side 'of the western branch of Cooper river,' containing about 175 acres, more or less, of rice land, with all the high lands attached, until 1st January, 1879, for the sum of one thousand dollars ; said party of the second part agrees to cultivate the place with rice, on their own account and risk, and for their benefit. The party of the first part agrees to allow the party of the second part to appropriate the amount, say one thousand dollars, in improving the trunks and banks on said place, provided so much be necessary, to enable the party of the second part to make a crop. The party of the second part agrees to advance one-half of the amount, say five hundred dollars ($500), in equal amounts with the party of the first part, until the sum of one thousand dollars ($1000) has been expended in making the repairs aforementioned, provided so much be necessary ; and the party of the first part further agrees that, should one thousand dollars ($1000) prove insufficient to make the repairs aforesaid thorough, he will advance something more, on being advised, so far as to render the repairs complete, and to furnish a flat, at his own expense, to enable the party of the first

part to do the work of repairs.   The party of the second part
agree to pay the balance of rent, say five hundred dollars ($500),
on the 1st January, 1879, and to return the plantation to the
owner, on said day, in good order.

  (Signed)        " C. T. MITCHELL.
  (Signed)        " NELSON & COLCOCK.
    " Witness :
(Signed)  " S. W. FISHER.
(Signed)  " JOHN B. MILLIKEN."

It seemed to be conceded that the word " first " on the sixth
line (the last line on page 106,) from the bottom of this agree-
ment, should have been written " second."   That defendants
entered into possession of said plantation and proceeded to repair
and plant rice on the same.   Up to the time of the high tide in
April, 1879, defendants had expended $752.55 in repairs, ac-
cording to the contract, of which plaintiff furnished $500 and
defendant the balance, and defendants afterwards expended a
sufficient sum to make the whole amount, ($937.72.)   During
the month of April sixty-eight acres were planted in rice, and
the rice made on it was, at the proper time, gathered by defend-
ants.   At the high tide in April occurred a break in the dam,
out of which this controversy has arisen.   By this break one
hundred acres of the land were overflowed, and when this break
was repaired it was too late to plant this portion of the land.
This break was not caused by any defect of the trunks or ordi-
nary leak in the dam itself, or by its being cut away by water
running over it, but I infer from the testimony that it was caused
by the heavy pressure of water at an unusually high tide, which
caused the foundation of the dam to give way ; that there were
no indications beforehand which pointed to any special danger
to this point of the dam, or which showed that any repairs were
necessary for it ; that very soon after the break, April 22d, 1878,
defendants notified plaintiff of the condition of affairs, and re-
quested an advance of money to make the repairs.   This request
was refused, except on condition that defendants would give
security for the return of the money, and thus do the work at
the expense of defendants.   That this condition being declined,

the plaintiff proceeded at his own expense to repair the dam, expending thereon at this break about $3000.

This break in the dam was not such as is most common, but was caused by a state of things to which prudent rice planters on Cooper river look when making their estimate of their prospect of success as planters. It is to recover this amount thus expended that this action is brought, on the ground that defendants, Nelson & Colcock, agreed to return the plantation to the owner on January 1st, 1879, in "good order." The demand for judgment is for the amounts thus expended, and it is admitted that the bill of particulars contains only about $3000, which is claimed, the other items being expenditures for other purposes.

If this were an ordinary contract to rent the plantation to the defendants for one year, without any further covenants on the part of plaintiff, I would hold that the *agreement to turn over in* "*good order*," carried with it an obligation to do everything necessary to enable the tenant so to "turn over" in "*good order.*" I would also hold that the cause of disaster in this case is not such as would exempt the defendants from their liability on such a contract to repair. The contract in this case, however, contains other covenants on the part of plaintiff, and the liability of defendants depends upon the performance by plaintiff of his part of the contract. What are those covenants on part of plaintiff? An examination of the contract shows that the plaintiff agreed to allow the defendants "to appropriate $1000 in improving the trunks and banks," if so much be necessary, to enable the defendants "to make a crop," and if $1000 "prove insufficient to make the repairs aforesaid *thorough,* he will advance *something more* on being advised, so as to render the repairs *complete.*" The amount which plaintiff agreed to advance was $500, the defendants were to advance $500 out of the rent for the year, and then the plaintiff agreed to advance "*something more*" for this purpose—a very indefinite sum, certainly. It is unreasonable to hold that the defendants were bound to provide against such disasters as this break in the dam in April, 1878, by their agreement to turn over in "*good order,*" and that plaintiff was not bound to provide against the same disaster by his agreement to furnish the means to put the plantation in

proper repair " to enable defendants to make a crop." In point of fact the plantation was never in such order, and the fact was shown by the condition of things when one hundred acres were rendered unfit for cultivation in 1878, and the plaintiff's agreement covered the period not only of planting, but making the crop, not until April, but until October or November. If the break had occurred after this period when the crops had been gathered, the condition of the parties would have been changed, and defendants might then have been liable under their agreement " to turn over " in good order, " to pay for repairs."

It was the duty of defendants, after they had information of the break, or if there had been any danger apparent, to advise the plaintiff, so that he could furnish the money according to his contract, and defendants have done their duty in this respect. It seems clear that the advisement of plaintiff, as to the necessity of furnishing something more, was to depend on information gained by experience after the expenditure of $1000.

The answer seems to admit, in one of its clauses, that the plantation was " put in order for the making of a crop," but there is no admission that the repairs were so " thorough " and " complete " as is contemplated by the written agreement, as shown by other averments in the answer. This is a case in which the parties in this court stand upon their covenants, and in the view taken by the court of this agreement, the plaintiff is not entitled to recover on the contract to " turn over " the plantation in " good order " the amount expended by him in repairs, and the complaint is dismissed with costs.

The plaintiff appealed upon the grounds—

1. Because his Honor erred in holding that, under the covenants in the lease, the plaintiff was bound to make the repairs.

2. Because his Honor erred in holding that the defendants were not bound to make the repairs.

3. Because, by the common law, and by their covenants in the lease, the defendants were bound to keep the premises in repair, and to return the plantation to the owner in good order ; and, having failed to make the repairs needed, they were liable to re-

imburse the plaintiff for the moneys expended by him in that behalf, and his Honor should have so decided.

4. Because his Honor erred, through misapprehension, in stating that it was admitted that only $3000 were expended by plaintiff on the repairs in question, a larger sum having been so laid out.

5. Because the decree is contrary to law.

*Mr. W. H. Brawley,* for appellant.

*Mr. T. G. Barker,* for respondents.

The defendants were not bound, by common law, to mend this break, at an expenditure three times their rent. It was the act of God or inevitable accident, and not voluntary or permissive waste. 4 *Kent* 77 ; *Smith's Land. & Ten.* 195, 248 ; *Add. on Torts,* §§ 319, 321 ; 10 *B. & C.* 312 ; 4 *Otto* 68 ; *Broom's Leg. Max.* 50, 69. The stern measure of responsibility established in 1 *Dyer* 10, because of the lessee's express covenant, has been extended in the interest of landlords in some cases, loosely, to cases of agreements, not so solemn in the eye of the old common law as a covenant by deed indented, and in some of the United States it has been held that wherever, by express contract, the tenant has bound himself to repair, and does not take care to stipulate against the act of God, he will be held bound to rebuild in case of destruction of the premises by fire or tempest. But it has not been so held in South Carolina, and the leaning of the courts has been the other way. 4 *McC.* 447. The plaintiff relies on our agreement to return in good order. But this is only implied, and the authorities above cited show that a liability to rebuild can only arise from express covenant to repair. We say further, that we did return in good order, as these words only mean a covenant against voluntary waste. 4 *Otto* 68. If such construction were tenable, it is dependent upon plaintiffs' previous covenants to repair. *Taylor's Land. & Ten.,* § 360 ; 69 *E. C. L. R.* 916.

*Mr. Brawley,* in reply.

It is clear that the repairs were to be made by the lessee. As the repairs necessary for planting were to be judged of and made

by the lessees, and as the lessor has not failed in any part of his ·covenant to furnish the money to repair " when advised," the ·defendants cannot escape from their express covenant to " return in good order." 3 *Ves., J.,* 38, *note* 2; 16 *M. & W.* 541; 16 *Mass.* 238. They were to repair, and the lessor was to pay a ·certain sum and " something more," which was not called for and could not mean three times the sum fixed. The rule is that "if the lessee covenant to repair and restore the premises *or* to surrender them in good condition *or in terms to that effect,* he will be bound to make good his covenant and rebuild the premises if destroyed, and in the meantime to pay his rent, though the loss may have happened without his fault." 1 *Washb. on Real Prop.* 441, 446; *Story's Eq. Jur.,* § 101; *Taylor's Land. & Ten.,* §§ 357, 364. According to the testimony, the usage is for the tenant to repair. 2 *Phil. Ev.* 787, 796; 9 *Wheat.* 582; 2 *Parsons on Cont.* 536–539. The lessor has performed his covenant; the lessees have failed to perform theirs, for they are bound to make all repairs necessary during their term. 4 *Cush.* 385. Such breaks were ordinary incidents, and therefore not the .act of God. If they were of rare occurrence, they should have been stipulated against, and not having been, the lessees are bound .by their contract to return in good order. *Story's Eq. Jur.,* § 101; *Dyer* 33 *a;* 2 *Saund.* 422, *note;* 6 *T. R.* 650, 750; *Arden* v. *Pullen,* 10 *M. & W.;* 2 *N. Y.* 86; 4 *McC.* 431; 2 *Parsons on Cont.* 672.

February 25th, 1880. The opinion of the court was delivered by

WILLARD, C. J. The appeal in this case brings up only the rulings of the Circuit judge as to matters of law. The whole case turns on the question of the construction of a lease of lands for rice planting. If by the construction of the lease the lessee was only bound to advance a certain sum in making repairs, ·from whatever cause the necessity for such repairs might arise, whether before the commencement of the lease or during its continuance, then the Circuit judge properly held that the plaintiff ·could not recover. The agreement is set forth in the opinion of ·the Circuit judge, and the conclusion of fact there stated must

be regarded as conclusive on the present appeal, where not affected by errors which we are called upon by the appeal to consider. Plaintiff claims to have expended on the leased premises, during the term of the lease, a large sum of money, and demands that such expenditure be repaid by defendants. Such a demand, to be sustained, must have a foundation in the contract of the parties. No agreement affecting the subject, made subsequent to the lease, has been established, so the demand must be determined by the terms of the lease itself.

The question arises, then, was the lessee, by the terms of the lease, bound to advance more than $500 in repairs, from whatever cause the necessity for such repairs might arise? It is not contended that the necessity for such repairs arose from any misconduct on the part of the defendants. The lease contains a covenant to return the plantation in good order. It will not be necessary to consider what would have been the right of the parties if they had been wholly dependent on the covenant to return in good order. The lease contains a specific agreement as to repairs, and the duties imposed by such specific agreement must be considered in construing the covenant to return in good order. If, then, it should appear that the duty of the lessee to repair is limited in a particular manner by the special agreement, the general covenant must be sustained to that limit, otherwise the agreement could not stand together as a whole, but would be inconsistent with itself.

The part of the lease important to the question is as follows: "The party of the first part agrees to allow the party of the second part to appropriate the amount, say $1000, in improving the branches and banks on said place, provided so much be necessary to enable the party of the second part to make a crop. The party of the second part agrees to advance one-half of the amount ($500) in equal amount with the party of the first part until the sum of one thousand dollars ($1000) has been expended in making the repairs aforementioned, provided so much be necessary; and the party of the first part further agrees, that should one thousand dollars ($1000) prove insufficient to make the repairs aforesaid thorough, he will advance something more, on being advised, so far as to render the repairs complete, and to

furnish a flat at his own expense to enable the party of the first part to do the work of repairs. The party of the second part agrees to pay the balance of the rent on the 1st day of January, 1879, and to return the plantation to the owner on said day in good repair."

According to this agreement a sum of $1000 was to be made up to make the repairs, the plaintiff contributing to that sum $500 and the defendants a like sum. The advance made by the defendants was to be credited on account of the annual rent of $1000, and the balance on the rent was to be paid by the defendants at the expiration of the lease. The defendants nowhere covenant expressly that they will make the whole repairs that might be necessary, independent of the sufficiency of the sum supplied under the contract for that purpose, and their agreement in that respect cannot be extended by implication, because such implication would conflict with the agreement of the plaintiff to extend the amount of $1000 to an indefinite amount beyond that sum. For this purpose it is unimportant to inquire whether the contract contemplates merely a small advance or such as circumstances might render necessary, for in either case the idea that further improvements should call for further advances, whether large or small, on the part of the plaintiff, and for no such advance on the part of the defendants, is in irreconcilable conflict with an implication that the defendant was bound to indefinite repairs. This conclusion is aided by the circumstances that the agreement, considered at large, recognizes the duty of repair as resting on the plaintiff, and only demands of the defendants an advance payment of rent. It follows, then, that if the class of repairs upon which the plaintiff claims to have expended the money demanded of the defendants, are embraced in those repairs that are the subject of the special agreement, then the limit of the duty of repair imposed by the lease on the defendants was to the expenditure of such sums as should be supplied by the plaintiff for that purpose, including the limited advance to be made by themselves.

The agreement speaks, in one place, of the subject of the special expenditure as "improvements," and in another place as

H

" repairs," so that it must be concluded that all needed improvements and repairs were intended to be provided for. The *improvements* and *repairs* to be made are not confined by any expression whatever to cases where the necessity of the cause existed at the date of the lease. It is not competent to insert such a limitation in the·language on the ground afforded by the evidence in the case, that a large amount of repairs were called for at the date of the lease, as that would be making a contract for the parties rather than interpreting the contract made by themselves. The object of such improvements and repairs is stated, namely, " to enable the party of the second part to make a crop." To make a crop is to plant, cultivate and harvest it, and we must understand the contract to use it in that sense. It is competent to look to the object of an agreement to define and limit the means proper for attaining that object where no particular means are specified or excluded.

The question, then, presents itself whether an injury sustained by the premises after the date of the lease of such a nature as to interfere with the making of a crop, would have been a proper object for the expenditure of the fund specially applicable to improvements and repairs. It is clear that it would have been. Such being the case, it must be concluded that the repairs made by the plaintiff in their nature belong to the class provided for in the special agreement.

Whether the necessity for these repairs arises from an ordinary or extraordinary casualty is immaterial, for the agreement draws no such distinction, and the rights of the parties must be determined by the agreement alone.

In view of the foregoing conclusions it is unnecessary to consider the limit of the plaintiff's obligation to make·repairs, for the defendants' obligation being limited the plaintiff's demand in excess of that limitation must fail. Nor is it necessary to put a precise construction on the covenant to return in good order, it being sufficient for the purposes of the present case to say that that covenant did not impose any general obligation to make repairs in excess of what had been provided for in that part of the agreement that professed specially to deal with that subject.

It is clear that the conclusions of the Circuit judge are correct. The appeal must be dismissed.

McIVER and McGOWAN, A. J.'s, concurred.